

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Hon. Sidney Latham
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. O-5876
Re: Refund of franchise taxes paid
under protest after judgment in
so-called class action.

Your request for opinion, dated February 19, 1944,
has been received and considered by this department. We
quote from your letter of request as follows:

"For the tax year 1940 the Intangible Tax Board
of Texas found no intangible values for the Texas-
Mexican Railway Company and numerous other railroads not
necessary to mention. All of such railroads having no
intangible value claimed, however, that they were
entitled to the four-fifths credit on their franchise
taxes provided for in Article 7084(b), contending that
the exemption ran in favor of any company subject to
the intangible tax statute irrespective of whether
any intangible taxes were actually paid.

"The then Secretary of State, however, reclassi-
fied all such railroads as public utilities and proceeded
to compute, levy and assess franchise taxes under Sub-
division d of Article 7084. Upon such action being
taken by the Secretary of State, the various railroads
involved paid the tax so computed under protest. Within
the 90 days allowed by Article 7057b, Section 2, the
Texas-Mexican Railway Company and the San Antonio Southern
Railway Company joined in filing Cause No. 63609, styled
The Texas-Mexican Railway Company, et al versus M. O.
Flowers, et al in the 98th District Court of Travis
County, Texas. The petition in this suit states that it
is brought on behalf of the two named plaintiffs as well
as all other corporations belonging to the same class
and similarly situated, but no such companies were specifi-
cally named except the two above mentioned.

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Sidney Latham, page 2

"In the trial of the case judgment was rendered in favor of the plaintiffs and against the State of Texas. The judgment of the trial court was subsequently affirmed by the 3rd Court of Civil Appeals, 174 SW(2d) 70. This decision was rendered July 28, 1943, and no writ of error was applied for.

"Section 2 of Article 7057b provides among other things as follows:  'Provided, however, where a class action is brought by any tax-payer all other tax-payers belonging to the class <u>and represented in such class action</u> who have properly protested as herein provided shall not be required to file separate suits but shall be entitled to and governed by the decision rendered in such class action.  A class action shall include any suit filed by <u>any two or more persons, firms, corporations or association of persons who have paid under protest such taxes or fees</u> referred to in Section 1 hereof.' (underscoring ours.)

"It is to be noted that the suit brought by Texas-Mexican Railway Company and San Antonio Southern Railway Company complies with the definition of a class action as contained in the statute since there were as many as two plaintiffs joining in the suit; but the language 'and represented in such class action' appearing in the statute preceding the definition of a class action seems possibly to indicate that all parties expecting to claim the benefits of the class action should possibly be named in the petition or otherwise represented in the suit.

"Numerous railroads falling within the same class as Texas-Mexican and San Antonio Southern have now made demands of this office for a refund of the amount of franchise taxes heretofore paid under protest. None of these railroads, except Texas-Mexican and San Antonio Southern, were specifically named as plaintiffs in the petition, and so far as this office is advised, none of the others intervened in such suit, but they now contend

Hon. Sidney Latham, page 3

plaintiffs. Under date of January 18, 1944 your department in a letter addressed to Hon. Jesse James, State Treasurer, specifically authorized a refund to the plaintiffs named in the judgment.

"In the light of the above facts, will you please advise this Department upon the following inquiries:

"1. Is it necessary that one claiming the benefits of the class action provided for in Section 2 of Article 7057(b) be specifically named as a plaintiff or intervener in a suit to recover franchise taxes paid under protest in order to claim the benefits of a judgment rendered in a class action?

"2. Should this office refund the franchise taxes paid under protest to those railroad companies in the same class as Texas Mexican Railway Company and San Antonio Southern Railway Company?

"3. Should this office, in the light of the Court of Civil Appeals decision above referred to, again reclassify such railroads and compute their taxes hereafter under Subdivision (b) of Article 7084 rather than as a public utility under Subdivision (d) as was heretofore done?"

I.

Section 2 of Article 7057b, V. A. C. S., provides:

"Upon the payment of such taxes or fees, accompanied by such written protest, the taxpayer shall have ninety (90) days from said date within which to file suit for the recovery thereof. . ."

This is a specific provision requiring affirmative action on the part of the taxpayer within the ninety day period. Said Section 2 later provides that when a "class action" is brought, other taxpayers of the same class "shall not be required to file separate suits." This provision certainly cannot be construed to relieve the taxpayer of the duty of taking action within the ninety day period, but at most states a rule of permissive joinder in a suit already filed. This

Hon. Sidney Latham, page 4

is especially true in view of the qualifications the statute prescribes of these other taxpayers who shall not be required to file separate suits. These other taxpayers, the statute says: (1) must be "of the same class"; (2) must be "represented in such action"; and (3) must "have properly protested as herein provided." If a taxpayer is of the same class as those filing the suit, and has properly protested, he is then permitted to intervene in that suit instead of being required to file an independent suit. This was provided by the Legislature in order to avoid a multiplicity of suits. Acts of 1939, 46th Legislature, S. B. No. 400, Sec. 4. Absent such a statutory provision, this taxpayer's attempted joinder in the same suit would be improper and would not be permitted, as his cause of action is separate and distinct from that of the plaintiff who brought the suit.

That affirmative action is required of the taxpayer within the ninety day period is further indicated by these additional provisions:

"If suit is not brought within the time and within the manner herein provided. . . then and in that event it shall be the duty of the State Treasurer to transfer such money from the suspense account to the proper fund . . ."

Under this provision, as was pointed out in Conference Opinion No. 3048 (Opinion No. O-640), if at the expiration of ninety days no suit has been filed by the protesting taxpayer, for the recovery of such taxes, the collecting department cannot legally keep or cause to be kept in suspense such taxes.

Section 2 provides in part:

"The issues to be determined in such suit shall be only those arising out of the grounds or reasons set forth in such written protest as originally filed." (Emphasis ours)

Hon. Sidney Latham, page 5

Section 4 of Article 7057b provides:

"In the event however that suit is brought by such taxpayer within the time and within the manner hereinabove provided, and it be finally determined that such money so paid by such taxpayer, or any part thereof, was unlawfully demanded by such public official and that the same belongs to such taxpayer, then and in that event it shall be the duty of the State Treasurer to refund such amount, together with the pro rata interest earned thereon, to such taxpayer." (Emphasis ours)

This provision, as is pointed out in Opinion No. O-4819, means that refund can be made only after judgment favorable to taxpayer.

Although Section 2 refers to such action as a "class action," it is submitted that it is not a class action in the usual sense, but is one in a very limited, statutory sense. In the classic use of the term (and the decisions of the courts of equity may be examined to determine whether statutory provisions are applicable to a given case — 47 C. J. 43, Sec. 83; Tobin v. Portland Milling Co., 41 Or. 269, 68 P. 763) a class action is a suit brought by one or more plaintiffs, for themselves and others similarly situated, where a common or general interest is involved, or the parties are so numerous that it would be impracticable to bring them all before the court, and their common situation and interest make it possible, or their great number makes it necessary, for one or more to represent all. 1 Freeman on Judgments, 5th Ed., 950, Sec. 435; 20 R. C. L. 669, Sec. 9; 61 C. J. 1001, Sec. 1278. Where there cannot be a complete determination of the controversy without the presence of the persons in whose behalf the plaintiff brings the action, a representative or class action cannot be maintained. 47 C. J. 43, Sec. 84, and authorities cited.

Where there exists a mere community of interest in a question of law, a class action cannot be maintained. Thus a borrower who had been charged usurious interest could not sue for himself and also for the benefit of others who had paid the same defendant usurious interest to recover such payments, although the action was founded upon the same statute. Thomas v. Kentucky Trust Co., 156 Ky. 260, 160 S. W. 1037; 47 C. J. 47, Sec. 92.

As was said in Trustees of Jackson Township v. Thoman; 51 Ohio St. 285, 37 N. E. 523, 526:

"A suit to recover back is quite different in the grounds upon which a recovery can be had from a suit to enjoin a tax. In the latter case, each is not only interested in the question involved, but a judgment may be rendered in favor of all as a class, upon substantially the same case, and terminate the litigation. Not so in an action to recover back money paid under duress. In such case the judgment must not only be for each according to the amount due him, but must depend upon whether each, as an individual, paid voluntarily or involuntarily." (Emphasis added)

So here, the various protestants must be before the court (each within 90 days from the date of filing his protest), either as parties plaintiff or interveners, because:

1. The taxes are several, not joint.

2. Each protest is separate and distinct and must stand on its own merits. Of necessity the court cannot determine the validity of the individual protests, which are strictly construed, where each of these is not presented and at issue. Obviously the party who instituted the suit is interested only in proving the validity of his own protest and right to refund, and can in no manner be said to represent protestants not present.

3. Each payment is a separate transaction. As each taxpayer's cause of action is separate and distinct, there is no common title or such identity of interest as to bring all within the rule of virtual representation.

4. The rights and merits of each claim for refund rests upon different facts, and a recovery by one claimant would not be an adjudication for another.

5. Separate defenses would be required to each claim.

6. Separate recoveries would have to be adjudged to each claimant.

Hon. Sidney Latham, page 7

The purpose of the requirement in Section 2 of Article 7057b, that the protesting taxpayer must file suit on his claim within ninety days, is to quiet the title to the State's moneys, and to enable the suspense account items to be placed in the funds to which they belong. If any other construction than the one we adopt be placed on the "class action" provision, many suspense items may remain in question indefinitely.

In answer to your first inquiry, we hold that it is necessary for one claiming the benefits of the "class action" provided in Section 2 of Article 7057b to be specifically named as plaintiff or intervener in such suit in order to recover franchise taxes paid under protest.

## II.

The judgment in Cause No. 63,609 in the 98th District Court of Travis County, styled The Texas Mexican Railway Co., et al. v. M. O. Flowers, et al., entered on Nov. 23, 1942, reads in part as follows:

"It is therefore ordered, adjudged and decreed by the court. . . that:

"(3) The defendant, Jesse James, Treasurer of the State of Texas, make proper refund as provided by Article 7057b, as amended, to each corporation of the class for the benefit of which this suit has been instituted and which may have complied with Article 7057b, as amended, so as to entitle it to a refund in accordance with this judgment." (Emphasis ours)

For the reasons set out in answer to your first inquiry, the railroad companies now demanding refund have not complied with the provisions of Article 7057b so as to entitle them to a refund. There have been no findings on the following, all of which are essential to recovery: the name of the taxpayer; that the taxpayer paid under protest; that the taxpayer's protest was valid and stated sufficient grounds; that the court action, as to each such taxpayer, was instituted within the ninety day period; the amount due it as a refund.

Hon. Sidney Latham, page 8

Therefore, you should not refund the franchise taxes,-paid under protest, to the railroad companies in question.

III.

The Court of Civil Appeals, in Flowers, et al. v. Texas Mexican Ry. Co., et al., 174 S. W. (2d) 70, held that railroad corporations, regardless of whether they actually paid a tax upon intangible assets, were entitled to the four-fifths exemption on corporation franchise taxes granted by Article 7084, Section b, V. A. C. S., to corporations "now required by law to pay annually a tax upon intangible assets." At page 73 the court said:

"The evident purpose of Sec. B was to relieve those corporations as a class that were required to render for taxation all of their property both tangible and intangible. This was not made dependent upon the amount of such intangibles, relatively or otherwise. A railroad might own physical property that was actually taxed at values of many millions and yet its intangibles (for a given year) might be assessed at only a few hundred, and the tax thereon be negligible, or at least relatively so. However, such railroad would fall within Sec. B the same as one that paid a relatively great intangible tax. The theory of the 4/5 exemption clearly is that corporations whose intangibles are required to be assessed under the act are paying more nearly upon a full rendition basis than those not within the act; and this whether or not in any one year the total value of their assets exceeds the assessed value of their physical properties." (Emphasis ours)

Thus, in answer to your third inquiry, you should reclassify such railroads and compute their taxes hereafter under Section b of Article 7084, V. A. C. S.

Hon. Sidney Latham, page 9


   Trusting that the foregoing fully answers your inquiries, we are

         Yours very truly

APPROVED MAR 1, 1944  ATTORNEY GENERAL OF TEXAS

        OF TEXAS

        By Arthur L. Moller
          Arthur L. Moller
            Assistant

ALM:ALM

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN